# SUPREME COURT.

## The Mayor, &c., of New York agt. The Forty-second and Grand Street R. R. Co.

*City railroads — their liability to pay a license fee — complaint.*

By an ordinance of the common council, duly enacted and passed the 31st day of December, 1858, it is required, that each and every passenger railroad car running in the city of New York, below One Hundred and Twenty-fifth street, shall pay a license fee of fifty dollars, except the small one-horse cars, which shall each pay twenty-five dollars annually as such license. The defendant has operated and controlled its railroad, by virtue of an act of the legislature passed April 17th, 1860 (*Laws of 1860, chap.* 515), the second section of which provides, that "said railroad * * * shall be subject to such reasonable rules and regulations in respect thereto, as the common council of the city of New York may, from time to time, by ordinance prescribe, *and to the payment to the city of the same license fee annually for each car run thereon, as is now paid by other city railroads in said city.*"

*Held,* that the liability of defendants does not depend upon the fact that the other railroads have *actually paid* their license fee into the city treasury, but upon the fact that they were required and legally liable to pay such fees; that the statute should be interpreted as if it read "and to the payment to the city of the same license fee annually for each car run thereon as is now *required* to be paid by other railroads in said city."

Although there is no distinct averment in the complaint that the other railroads in the city of New York, at the times mentioned in the complaint, were *actually* paying to the city the amount prescribed by the ordinance alleged in the complaint, or any sum whatever, it is not for this reason defective.

It is perfectly competent for the legislature to validate an invalid ordinance, and, although there seems to be some doubt as to the power of the common council to pass such an ordinance as that of 1858, it being an ordinance for revenue purposes only and not for police and internal government, still, the legislature, by the act of 1860, under which the

The Mayor agt. The Forty-second and Grand Street R. R. Co.

defendants acquired their right to run cars through the streets, recognized the validity of the ordinance of 1858.

*Special Term, June,* 1876.

*Mr. Clarkson,* for plaintiff.

*Mr. Ely,* for defendant.

LAWRENCE, *J.* — The complaint, in my opinion, states a cause of action against the defendant.

It is alleged that by an ordinance of the common council duly enacted and passed on the 31st day of December, 1858, it is required, that each and every passenger railroad car running in the city of New York, below One Hundred and Twenty-fifth street, shall pay into the city treasury a license fee of fifty dollars, except the small one-horse cars, which shall each pay twenty-five dollars annually as such license. It is averred that this ordinance continued in force up to the 18th of March, 1875, when another ordinance was passed. The provisions of this last ordinance it will not be necessary to consider in disposing of this case, as the claim stated in the complaint arises wholly under the ordinance of 1858, and the act of 1860 hereinafter referred to. The complaint further alleges that the defendant is a corporation existing under the laws of the state of New York, and that by virtue of the provisions of the act (*chap.* 515 *of the Laws of* 1860) entitled "An act to authorize the construction of a railroad on Tenth avenue, Forty-second street, and certain other avenues and streets of the city of New York," passed April 17, 1860, the defendant has operated and controlled the railroad known as the Forty-second Street and Grand Street Ferry Railroad, occupying certain streets and avenues in the city of New York below One Hundred and Twenty-fifth street, and is the proprietor of a large number of passenger cars running daily thereon. It is then averred that the defendants, upon occupying the said streets and avenues, and running cars thereon, as per-

mitted by and in accordance with the terms of the act above referred to, became liable to the payment of a license fee to the plaintiffs of fifty dollars upon each car so run; and after stating that during certain specified years the defendant ran a specified number of cars, it is again alleged that the defendant is the proprietor of the said cars and thereby has become indebted to the plaintiffs in the sum of fifty dollars annually for each car run, amounting in the aggregate to the sum of $36,000. Demand of the payment of such fees and the refusal of the defendant to make such payment are also alleged. To this complaint a demurrer is interposed on the ground that it does not state facts sufficient to constitute a cause of action.

The act of 1860, under which the defendant, by its demurrer, admits that it has been engaged in running the cars referred to in the complaint, by its second section provides that "said railroad * * * shall be subject to such reasonable rules and regulations in respect thereto as the common council of the city of New York may from time to time by ordinance prescribe, *and to the payment to the city of the same license fee annually for each car run thereon as is now paid by other city railroads in said city*" (*Laws of* 1860, *p.* 1051).

There is no distinct averment in the complaint that the other railroads in the city of New York, at the times mentioned in the complaint, were *actually* paying to the city the amounts prescribed by the ordinance, alleged in the complaint, or any sums whatever, and the defendant claims, if I correctly apprehend the argument of counsel, that for this reason the complaint is defective.

This position I do not regard as tenable. The complaint shows that by an ordinance of the common council it was, at the times referred to, required that each and every passenger railroad car should pay the annual license fee which, it is alleged, that the defendant has neglected to pay.

It is not alleged that the cars of the defendant were the

small, one-horse cars, but that they were passenger cars. There is, therefore, no uncertainty as to the cars which are intended by the pleader, nor can it be said that there is any doubt, after reading the complaint, as to the branch of the ordinance upon which the plaintiffs rest their claim.

If the ordinance was valid the liability of the defendant does not depend upon the fact that the other railroads have *actually paid* their license fees into the city treasury, but upon the fact that they were required and legally liable to pay such fees.

The object of the statute was to put this railroad on the same footing as the other railroads, and the legislature must, I think, be presumed to have had the ordinance of 1858 in contemplation at the time of the enactment of the statute. It surely cannot be supposed that the legislature intended that the liability of this railroad to pay license fees should be dependent upon the fact of the *actual payment* of such fees by the other railroads. If such be the true construction of the act, it necessarily follows that any railroad, by neglecting or refusing to pay its license fees, could, by its illegal act, exempt all the other railroads in the city from such liability. Such a construction of the statute seems to me to be unreasonable and forced, and I am convinced that it will be more in unison with the true principles of construction to interpret the statute as if it read : " And to the payment to the city of the same license fee annually, for each car run thereon, as is now *required* to be paid by other railroads in said city."

I have discussed this question, so far, on the assumption that the ordinance of 1858 was a valid ordinance, and one which it was perfectly competent for the common council to ordain. Upon the argument I did not understand the learned counsel for the defendant as attacking the validity of the ordinance, or as questioning the power of the common council to pass it ; and yet, at the hearing, I was strongly inclined to the opinion that the decision of the Court of Appeals in the case of *The Mayor, &c.,* agt. *The Second Avenue Railroad* (32 *N. Y.,* 261), determined that the ordinance was absolutely

null and void, as not being within the powers delegated to the common council. Upon examining that decision I find, however, that is based, in a great measure, upon the fact that the city had granted to the assignors of the company the right to run their cars through certain streets and avenues without receiving any license fee therefor, and that the subsequent attempt by the city to impose a license fee upon the company was in violation of its contract, and that, therefore, the ordinance, as to that company, was void. It is true, that Judge BROWN, in delivering the opinion of the court, very strongly questions the right of the city to pass such an ordinance, on the ground that it was to be construed as an ordinance for revenue purposes only, and not for police and internal government; but I think a careful reading of the opinion will show that the decision mainly proceeds on the theory that the ordinance was in violation of the contract made between the city and the assignors of the defendant (see 32 *N. Y.*, *p.* 272).

In any event, the effect of the act of 1860 was not discussed or involved in the decision of that case, and it is, therefore, not very material whether I am right in my interpretation of that decision. It was perfectly competent for the legislature to validate an invalid ordinance. It is not suggested that there was any law or ordinance, at the time the act of 1860 was passed, requiring the payment of license fees for railroad cars other than the ordinance of 1858.

If, therefore, the conclusion is sound, that the legislature must be presumed to have had the provisions of the ordinance of 1858 in contemplation at the time the act of 1860 was passed, the act amounts to a legislative recognition of the validity of the ordinance, and the defendant having acquired the right to run cars through the streets wholly from that act, is not in a position to attack or question the ordinance.

There must be judgment for the plaintiffs overruling the demurrer, with leave, however, to the defendant to answer within twenty days upon payment of costs.